PIERCE

v.

WESTINGHOUSE ELECTRIC CORP. et al.

No. 12574.

Court of Civil Appeals of Texas.

Galveston.

Dec. 17, 1953.

Rehearing Denied Jan. 21, 1954.

Irving G. Mulitz, Williams, Lee & Kennerly, James W. Lee, Houston, for appellant.

Vinson, Elkins, Weems & Searls, Thomas B. Weatherly and B. J. Crane, Houston, for Westinghouse.

F. L. Andrews, Gerald T. Owens, Jr., Houston, and Andrews, Kurth, Campbell & Bradley, Houston, of counsel, for appellee W. A. Holt Co., Inc.

De Lange, Hudspeth & Pitman, Albert J. De Lange, C. M. Hudspeth, and Eugene J. Pitman, Houston, for appellee Pan Electric Supply Co., Inc.

Fulbright, Crooker, Freeman & Bates, M. S. McCorquodale, Houston, for appellee Leader Electric Co.

CODY, Justice.

This action was brought by Dr. Wendell E. Pierce to recover damages for injuries to his eyes which he alleged were caused by the rays of an ultra-violet "sunlamp" which was manufactured by defendant, Westinghouse Electric Corporation, and which was placed in a stand and furnished with a reflector by defendant, Leader Electric Company, and which was sold by said defendant to defendant, Pan Electric Supply Company, Inc., a wholesaler of Chicago, which in turn sold same to retailer, W. A. Holt Company, Inc., of Houston, which sold same to plaintiff on March 7, 1951, for $18.95. Plaintiff alleged that he used said lamp on the date he purchased it, and that the proximate cause of his injuries was the negligence of defendants in failing to give him adequate warning of the danger incident to the use of said lamp.

At the conclusion of plaintiff's evidence, each of the aforesaid defendants moved for a directed verdict, or for judgment.

The court granted the motions of the wholesaler and retailer defendants for judgment, but refused the motions of defendants, Westinghouse Electric Corporation and Pan Electric Supply Company, Inc. After plaintiff had so rested, the two named defendants were the only defendants to participate in the trial. After said defendants had for some days introduced evidence in their defense, plaintiff asked leave to file a trial amendment, which request the court refused. At the conclusion of all the evidence the aforesaid two defendants which remained in the case moved for a directed verdict, which was refused. The plaintiff objected and excepted to portions of the court's charge, and has duly reserved his exceptions to the court's action in overruling his said objections and exceptions. The court then submitted the case to the jury as against the said two defendants which remained in the case. Upon the answers of the jury the court rendered judgment that plaintiff "take nothing." The interlocutory judgment in favor of the wholesaler and retailer defendants was made final. The jury answered the damages issues to the effect that plaintiff had sustained damages in the sum of $84,390.32.

The plaintiff has brought up the wholesaler and retailer defendants as appellees, but he has urged no error as having been committed by the court which would authorize the reversal of the judgment in their favor. We, therefore, affirm the judgment that plaintiff "take nothing" as against defendants, Pan Electric Supply Company, Inc., and W. A. Holt Company, Inc. The plaintiff, hereafter referred to as *appellant,* predicates his appeal upon 7 points, complaining, (1) of the court's action refusing him leave to file his proffered trial amendment; and complaining in his points 2, 3, and 4 of the court's action in submitting Special Issue No. 1; and complaining in his points 5 and 6 that the court submitted appellant's affirmative issues, conditioned upon the jury's answers which were irrelevant to appellant's said affirmative issues; and complaining in his point

7 of the court's refusal to give appellant's requested instruction on the aggravation of appellant's injury by his own doctor.

Appellees themselves presented cross-points urging that the court erred in not instructing a verdict in favor of defendants as the evidence contained in the record in this case showed that no such result as appellant charged had ever before occurred in the annals of recorded science or medical history from the use of ultra-violet rays so that appellees could not have reasonably foreseen any such result.

We will first discuss appellees' cross-points which we overrule. There was evidence to the effect that appellee Westinghouse had sold some 87,000 sunlamps, and the present suit is the only instance in which any claim was ever filed seeking to recover damages for injuries to the eyes of the user. There was further evidence that Westinghouse made extensive tests, and discovered nothing to apprize it of any danger that any such injury as appellant claims to have received could result from the use of said lamp. There was also evidence that among the great number of welders who use ultra-violet rays only a relatively small number—though a considerable number considered by itself—received painful "sunburn" to their eyes from said rays; and there was never any instance before appellant's case where any permanent injury to the human eye was ever claimed to have resulted from the use of ultra-violet rays. In other words, from the evidence of expert witnesses, appellees proved that appellant's case is the first instance in which it was ever known that scar tissue formed across the eyes of one suffering an ultra-violet burn—that is, a permanent impairment of the vision, if, indeed, the permanent injury to appellant's eyes was caused by ultra-violet rays. Appellees' liability for the permanent injury to appellant's eyes is not necessarily limited to what injury the rays themselves unaided may have caused.

Appellant's evidence here showed that he exposed his eyes to the sunlamp, manufactured and sold by appellees, in the after-noon of March 7, 1951, and that about 3:00 of the morning of March 8, 1951 appellant began to suffer pains in his eyes, which he described as intense; that he called in an eye specialist to treat his eyes or alleviate his pains; that the eye specialist used pontecaine, an anesthesia, in treating appellant's eyes. This medicine, according to the evidence, is customarily used in a ½ of 1% solution, whereas appellant's doctor prescribed, and appellant used a 2% solution. And it was appellees' evidence, which was not disputed, that a 2% solution is never used in the treatment of the eyes, but is used only for general anesthesia. And according to the scientific evidence offered by appellees' witnesses, which was also not disputed, the scar tissue which resulted from this unusual and unprecedented use of such a heavy solution, when applied to the eyes in the condition caused by the rays (which was temporary), caused the scar tissue or permanent impairment of the vision, and the permanent impairment of the vision was not the unaided result of the initial ultra-violet burn. It is the position of appellees that they gave abundant warning of the only danger of ultra-violet burn which they could have foreseen, and an adequate caution on how to avoid it. It is their further position that they could not be held accountable for a doctor resorting to an unprecedented treatment and the result which followed such treatment, as they could not reasonably have foreseen that a doctor would give such treatment to eyes which had received a "sunburn."

The law here applicable is, that where an injury has been proximately caused by the negligence of a party and the person who suffered such injury acted in good faith and with ordinary care in the selection of a physician to treat him and the treatment aggravates the injury, the injured person is nevertheless entitled to recover therefor "for this is one of the consequences that the defendant should have anticipated as a probable result of its negligent conduct." Hicks Rubber Co. v. Harper (opinion by the late Chief Justice Alexander while on the Court of Civil Appeals), 131 S.W.2d 749, 751. Appellant's evidence

authorized, if it did not compel, the conclusion that in selecting his doctor to treat his eyes he acted in good faith and with ordinary care.

We have found it quite difficult to determine whether the court's refusal to permit appellant to file the proper trial amendment was an abuse of sound judicial discretion. Rule 66, T.R.C.P., prescribes a definite limitation upon the court's discretion to refuse trial amendments. The Rule makes it the court's duty to "freely" allow a trial amendment "if to do so will subserve 'the presentation of the merits of the action' and the other party fails to satisfy the court that the amendment will prejudice him in maintaining his action or defense on the merits." Vermillion v. Haynes, 147 Tex. 359, 215 S.W.2d 605, 608, 609. In order to determine whether the court's refusal to permit the filing of the trial amendment was contrary to the provisions of Rule 66, we will consider so much of the pleadings as was relevant and the state of the proof at the time when appellant sought to have the pleadings amended, and the effect that the amendment, and consequent letting in of evidence, would have had upon the preservation of the merits of appellant's action, and the prejudice, if any, same may have had on the merits of appellees' defense.

Appellant went to trial on his second amended original petition. He alleged in said pleading that before he used the lamp, he carefully read the instructions and cautions (specifying these in detail) which accompanied it; that after he plugged the lamp in, he "sat on a chair which was located about four (4) or five (5) feet from the electrical apparatus in which had been placed the Westinghouse fluorescent sunlamp and which had been placed in front of him, and read a newspaper for a period of about five (5) minutes; after which he turned off the light"; that about 3:00 the next morning he began to feel great pains in his eyes and he has not been able to use them since. Appellant next alleged that the injury was proximately caused by the negligence of appellees in 8 specified particulars which he alleged operated concurrently and separately.

In his original petition, appellant had alleged that the chair on which he sat was located about 8 feet from the lamp. However, when appellees took his oral deposition the first time, he testified that he sat on a chair that was 4 or 5 feet from the lamp and some time shortly after such testimony was taken, appellant amended his petition to read as specifically quoted above from appellant's second amended original petition. Thereafter appellant again had occasion to amend his petition, but in the respects specifically quoted above no change was made. Upon the trial, appellant again specifically testified in conformity with his allegations specifically quoted above. His medical testimony was also to the effect that the exposure of his eyes to the ultra-violet rays at a distance of 4 or 5 feet for about 5 minutes could and probably did cause the injury to his eyes. After appellant rested, the defendants who remained in the case, and who are herein referred to as appellees, put on their defense. They demonstrated before the jury by placing some six different persons before the lamp at a distance of 4 feet, and for a period of 5 minutes, that the human eye could not receive an ultra-violet burn from such exposure. Some fifteen days after the trial had begun and for the first time on rebuttal, appellant's counsel asked appellant to demonstrate before the jury the manner and distance he sat from the lamp on March 7, 1951, as he remembered it. When appellant placed himself at obviously a lesser distance from the lamp than he had plead and testified to, appellees objected that the tendered proof was at variance with appellant's allegations. The court sustained the objection, and appellant thereupon tendered his trial amendment which undertook to charge that the distance he sat from the lamp was between two and four or five feet and that he believed the time was "about five minutes, the exact distance and time being not exactly known to plaintiff but are estimated as well as plaintiff is able to do so." Appellees objected to the filing of the trial amendment on the ground that it would permit appellant to change the entire theory of his law suit after he had seen appellees' entire defense. The court, in refusing to permit the

amendment, ruled "It would be manifestly unfair to let you say now it was two feet instead of four, and I am faced with the proposition that the defense put on six people who sat four feet from it before you offered the trial amendment."

■ If it is possible for a litigant to tie himself so completely to the manner in which an injury occurred that he cannot, after he finds he was mistaken, change his evidence and his pleading to conform to the facts, the appellant did that here. Appellant changed his version as to how the injury was received only after appellees demonstrated that the injury could not have been so received. And at all times it had been within the power of appellant to have made the demonstration before his attorneys that he belatedly sought to make before the jury. We do not think, however, that the theory upon which appellant based his cause of action was not the manner in which he received the injury, but, as set forth in the pleadings, upon which he went to trial, was that appellees were negligent in not giving appellant adequate cautions and instructions as to the dangers incident to the use of the lamp. His pleadings specified eight particulars in which appellees were so alleged to have been negligent, which negligence was the proximate cause of the injury to his eyes. In none of these eight specified particulars of negligence did appellant base his right to recover upon the failure of appellees to warn him of the danger of exposing his eyes to the lamp at a distance of four feet for a period of five minutes. It is our conclusion that under the holding in Vermillion v. Haynes, supra, it was error for the court not to have allowed the trial amendment so as to conform appellant's pleading to the proof which he sought to offer by way of demonstration before the jury.

The refusal of the court to permit the filing of the trial amendment, in and of itself, was not, it seems to us, reversible error necessarily. But the first special issue which the court submitted to the jury was based on said allegation in the appellant's petition, and read as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that the injuries, if any, to the eyes of the plaintiff, Wendell E. Pierce, were directly and proximately caused by plaintiff sitting on a chair, which was located about four or five feet from the electrical apparatus in which had been placed the Westinghouse Fluorescent sun lamp, and which had been placed in front of him, and reading a newspaper for a period of about five minutes?" The jury answered, "We do not."

■ Appellant duly and properly objected to the submission of Special Issue No. 1 and to making Special Issue No. 2 dependent upon the jury's answering Special Issue No. 1, "We do." Special Issue No. 2 inquired if the appellees in manufacturing and offering their product for sale failed to give such a warning of the danger, if any, involved in the use of their product as a reasonable and prudent person skilled in the manufacturing of sunlamps and apparatus containing sunlamps would have given under the same or similar circumstances. Appellant was entitled, in our opinion, to the submission of Special Issue No. 2 and the subsidiary issues based thereon, independent of Special Issue No. 1. There was evidence, among other things, that by keeping the eyes covered by goggles or closed, they would have been protected from any and all danger from the ultra-violet rays. We think that the court committed reversible error in submitting Special Issue No. 1, and in not submitting appellant's affirmative issues independent of Special Issue No. 1, and Special Issue No. 2 was one of appellant's affirmative issues. As submitted, the issue which the jury was required to answer was, in effect, whether the sole proximate cause of appellant's injuries was that he exposed his eyes to the lamp at a distance of four feet for five minutes. We believe that appellant did not, by his pleadings, charge appellees as liable for his injuries only if they did not warn him not to expose his eyes for four minutes at a distance of five feet; the eight different specifications of negligence charged in appellant's petition are too lengthy to here set out.

We sustain appellant's points complaining of the court's action in submitting Special Issue No. 1 and complaining of the court's submission of appellant's affirmative issues conditioned on the jury's answer to Special Issue No. 1.

We, accordingly, reverse the judgment of the trial court and remand same for a new trial as to the defendants we have herein referred to as "appellees," but affirm the judgment as to the wholesaler and retailer defendants.

Affirmed in part, and in part reversed and remanded.

HAMBLEN, C. J., not sitting.