# WESTINGHOUSE ELECTRIC CORPORATION ET AL
## v. DR. WENDELL E. PIERCE

No. A-4514.   Decided July 7, 1954.
Rehearing overruled October 20, 1954.
(271 S.W. 2d Series 422)

*Vinson, Elkins, Weems & Searls, Thomas B. Weatherly, B. Jeff Crane, Jr., Fulbright, Crooker, Freeman & Bates, Malcolm McCorquodale,* all of Houston, for petitioners.

The Court of Civil Appeals erred in holding that the trial court committed error, even though not reversible, in refusing plaintiff permission to file his trial amendment, after defendants had disclosed its defense by showing that it was an absolute scientific impossibility for plaintiff's eyes to have been injured as he contended. Vermillion v. Haynes, 147 Texas 359, 215 S.W. 2d 605; Texas Emp. Ins. Ass'n. v. Dillingham, 262 S.W. 2d 748; Great A. & P. Tea Co. v. Evans, 142 Texas 1, 175 S.W. 2d 249.

*Irving G. Mulitz, Williams, Lee & Kennerly* and *James W. Lee,* all of Houston, for respondent.

In reply cited Continental Natl. Bank v. Connor, 147 Texas 218, 214 S.W. 2d 928; Reiser v. Jennings, 143 S.W. 2d 99; Williams v. Creighton, 93 S.W. 2d 196.

MR. JUSTICE CALVERT delivered the opinion of the Court.

By this suit plaintiff-respondent sought damages of Westinghouse Electric Corporation and Leader Electric Company, respondents, and other defendants, for an injury to his eyes alleged to have resulted from the use of a "sunlamp" manufactured by Westinghouse. A jury trial resulted in a judgment for defendants. The Court of Civil Appeals has reversed and remanded. 263 S.W. 2d 810.

In his original petition plaintiff alleged that his eyes were burned by the ultraviolet rays of the lamp "within five minutes" after he sat on a chair, placed "about seven (7) or eight (8) feet" in front of the lamp, and began to read a newspaper. In his first amended petition he changed the allegations of distance to "about four (4) or five (5) feet" and the time to

"about five (5) minutes." He filed and went to trial on his second amended petition which contained the same time and distance allegations last mentioned.

Plaintiff's deposition was taken after the filing of his original petition and before the filing of his first amended petition and he testified that he was sitting in a chair about four or five feet from the lamp when the injury occurred. No doubt this testimony caused the change in allegations of distance as made in the pleadings. After his first amended petition was filed, his deposition was taken again and by his testimony he confirmed the time and distance features of his case as alleged in his first amended petition and as thereafter again alleged in his second amended petition. He testified on the trial, demonstrated to the jury how he sat in front of the lamp, and again confirmed these features of his case, and produced medical testimony that the exposure of his eyes to the ultraviolet rays at a distance of about four feet for about five minutes could and probably did cause the injury to his eyes.

During cross-examination of one of plaintiff's medical witnesses and in their evidence in chief after plaintiff rested his case, defendants demonstrated to the jury their theory, supported by their expert testimony, that the eyes could not receive an ultraviolet ray burn from the lamp in the manner in which plaintiff testified. They exposed some six different persons before the lamp at a distance of four feet for a period of five minutes and longer without ill effects.

Some fifteen days after the trial had begun and while defendants' expert witness was under cross-examination, plaintiff was asked by his counsel to again demonstrate before the jury the distance and manner in which he had sat before the lamp on the occasion of his claimed injury, whereupon he placed himself in a chair a little over two feet from the lamp. The defendants objected that the tendered proof was at variance with the pleadings and the objection was sustained. Plaintiff then sought to file a trial amendment in which he alleged the distance at which he sat on the occasion of his injury as "between two and four or five feet," and the time of exposure as "for a period of several minutes, plaintiff believes that it was about five minutes," and further: "the exact distance and time not being known exactly to plaintiff but are estimated as well as plaintiff is able to do." The trial judge denied permission to file the amendment in the face of defendants' objection that it would permit plaintiff to

change the theory of his suit after he had seen the entire defense thereto, the judge saying: "It would be manifestly unfair to let you say now it was two feet instead of four and I am faced with the proposition that the defense put on six people who sat four feet from it before you offered the trial amendment."

The Court of Civil Appeals held the trial court's refusal to allow the filing of the trial amendment to be error but not necessarily reversible error. 263 S.W. 2d 814. That Court reversed because if concluded the trial court had erred in the manner of submitting special issues. We find it difficult to separate the two problems.

The plaintiff alleged in the pleading on which he went to trial that the defendants were negligent in some eight particulars, all having to do with the failure to give adequate warning of the dangers from the use of the lamp and proper instructions in connection with the use thereof, which ommissions, separately and concurrently, proximately caused his injury, and which were summed up and submitted by the trial judge to the jury in two series of issues involving the usual issues of failure to properly warn and instruct, negligence and proximate cause. These issues were submitted, however, conditioned on an affirmative answer to Special Issue No. 1.

Special Issue No. 1 was as follows: "Do you find from a preponderance of the evidence that the injuries, if any, to the eyes of the plaintiff, Wendell E. Pierce, were directly and proximately caused by plaintiff sitting on a chair, which was located about four or five feet from the electrical apparatus in which had been placed the Westinghouse Flourescent sun lamp, and which had been placed in front of him, and reading a newspaper for a period of about five minutes?" The jury answered "We do not." Under the conditioned form of submission the jury did not answer Special Issues 2 and 5 bearing on the failure of defendants to properly warn and instruct and corollary issues 3, 4, 6, and 7 on negligence and proximate cause.

■ The trial court did not abuse its discretion in refusing to allow plaintiff to file the trial amendment.

Rule 66, Texas Rules of Civil Procedure provides: "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading * * * the court may allow the pleadings to be amended and shall do so freely when the

presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." The provision is a salutary one, directed at arriving at the true legal rights of the parties under the true facts, but we cannot hold that the trial court abuses its discretion in denying the right to file a trial amendment when the record discloses a probable resulting prejudice to the opposite party "in maintaining his action or defense."

■ It seems quite clear to us that the trial court was justified in concluding on the record before it that the proffered amendment and testimony supporting it would have prejudiced the defendants in maintaining their defense. Plaintiff's suit was filed on March 27, 1951. Trial of the suit began on November 18, 1952. In the meantime plaintiff gave his testimony by deposition on two occasions. In his last two pleadings and in his testimony in both depositions he definitely fixed the manner in which he was injured by the rays from the lamp. The defendants had a right to assume that the case as made by the pleadings and testimony was the case and the only case they were called upon to defend and to prepare their defense accordingly. Safety Casualty Co. v. Wright, 138 Texas 492, 160 S.W. 2d 238, 254; Erisman v. Thompson, 140 Texas 361, 167 S.W. 2d 731,733; Texas Employers' Ins. Ass'n. v. Dillingham, Texas Civ. App., 262 S.W. 2d 748, writ refused, N. R. E. This they did; and the record reflects that they were prepared with witnesses and experiments to convince the jury that plaintiff could not have sustained an injury in the manner in which he claimed to have sustained it as a basis for his suit. In his testimony on the trial, in making out his case, plaintiff confirmed his previous pleadings and testimony of the manner in which he was injured. It was not until after he was confronted with the full force of defendants' evidence that he sought to change the factual basis of his case. He and his attorneys were in possession of the lamp at all times after the alleged injury and it was therefore within their power at all such times to reenact the circumstances under which the injury was supposed to have occurred, thus enabling them to obtain different evidence as to the distance involved and to change the factual basis of the suit affording the defendants notice of the change in time to allow defendants full and fair opportunity to prepare for trial on a different factual basis.

We do not regard Vermillion v. Haynes, 147 Texas 359, 215 S.W. 2d 605, as controlling here. In that case trial was before the court without a jury. It involved a claim for rents. After

the close of the testimony and before judgment the defendant tendered a trial amendment setting up for the first time the defense of limitations. This court held that the trial judge abused his discretion in refusing to allow the amendment. These distinguishing features may be noted: There the amendment sought only to assert a defense in law to facts already established, while here the effort was to change the factual basis of the suit; there the trial was before the court, the new defense offered requiring only a judicial decision of a new law question not theretofore in the suit, while here trial was to a jury, the new matter being entirely factual and requiring an entire reshaping of the defense on the new facts.

Neither do we regard Ramsey v. Cook, Texas Civ. App., 231 S.W. 2d 734, no writ history, as controlling. In that case it was held that the trial court erred in refusing to permit the defendant to verify his plea of want of consideration during the course of the trial. The plea having been filed in ample time to give fair notice of the defense, it is obvious that the mere verification of it could not have operated to the prejudice of plaintiff's suit.

To require the trial court to permit amendments such as the one filed in this case would disrupt orderly procedure and lead to frequent interruptions and interminable delay in concluding expensive jury trials. McDonald's Texas Civil Practice, Vol. 2, page 737. Moreover, while not in the least imputing to the plaintiff an ulterior motive in this case, the practice would also open the door to fraud, a result to be zealously guarded against in the application and interpretation of our Rules of Procedure.

We next consider whether it was error to submit Special Issue No. 1, said by plaintiff to have been an evidentiary issue only, and to have refused an unconditional submission of Special Issues Nos. 2 through 7.

■ It is well settled, as plaintiff contends, that the usual way of submitting a negligence case is to inquire of the jury by special issues: (1) whether the defendant did or omitted to do the act alleged; (2) whether the act or omission was negligence; (3) whether such negligence was a proximate cause of the plaintiff's injury, and (4) amount of damages. Wichita Falls and Oklahoma Railway Co. v. Pepper, 134 Texas 360, 135 S.W. 2d 79, 82. To have followed this rule would have led to an unconditional submission of the requested issues.

In this case, however, plaintiff's allegations of negligence and proximate cause were inextricably tied in with his allegations of the manner in which the injury occurred. The lamp was accompanied by a written warning, admittedly read by the plaintiff, as follows:

### "C A U T I O N

"The lamp in this fixture produces beneficial ultraviolet rays radiating just as found in natural sun light, and excessive over-exposure of the skin or the eyes may result in severe sunburn.

"When using this flourescent sunlamp for personal irradiation, the following precautions must be observed:

"A. Do not look directly at the lighted lamp.
"B. Do not use too long an exposure time.
(Be sure not to fall asleep under the lamp).
"C. Do not operate lamp too close to the skin.
"D. When cleaning the fixture or installing sunlamp turn off current.

"On untanned skin an average person will receive a perceptible orothema (redenning of the skin) in about 8 minutes, two feet away from the bare lamp. Redenning develops faster with the lamp placed closer to subject and slower if placed farther away. This fixture is equipped with highly polished parabolic reflector, (the most efficient type of reflector known) which reduces exposure time required.

*CARE SHOULD BE TAKEN THEREFORE TO AVOID OVER EXPOSURE*
For AC current only."

■ Plaintiff's suit was founded on the theory that this warning was inadequate to inform him of the danger in using the lamp. The warning could not, as a matter of law, have been inadequate unless a direct warning against the use of the lamp in the manner in which plaintiff used it would have prevented his injury. In other words, if the use of the lamp in the manner in which plaintiff used it did not result in injury to him, there was no duty on the defendant to warn against use in that manner and the failure to so warn could not have been a proximate cause of the plaintiff's injury. It therefore became a critical issue in plaintiff's case whether plaintiff was injured as a result of using the lamp in the manner in which he said he used it. His pleading and testimony was to the effect that he sustained his injury while sitting at a distance of four or five feet from the lamp for a period of about five minutes. The testimony of his expert witnesses was that he could and probably did sustain his injury

from use of the lamp in that manner. He had no pleading or testimony that his injury resulted from use of the lamp in any other manner. On the other hand, the evidence offered by the defendants was directly to the contrary—that he could not and did not sustain his injury from use of the lamp in that manner. A jury finding that he did would have led to the necessity for a further finding whether the warning, above quoted, was adequate. A jury finding that he did not rendered issues on adequacy of the warning wholly immaterial.

To have submitted the case in the manner suggested by the plaintiff would have permitted the jury to indulge in pure speculation as to the manner in which the plaintiff used the lamp and to have answered that the warning was inadequate because the plaintiff must have been sitting closer to the lamp and for a longer period of time than he said he was.

The form of Special Issue No. 1 is identical in all material respects with a similar issue approved by this court in Eubanks v. Texas Employers' Ins. Ass'n., 151 Texas 67, 246 S.W. 2d 467.

Both trial and appellate courts in this state are in a constant struggle to maintain some simplicity in the manner of special issue submission of cases to juries, the while staying within time-honored patterns of procedure which guarantee a fair trial to litigants. The simple, direct and controlling manner of submitting this case was followed by the trial judge and we cannot conclude that in adopting that method of submission he commited reversible error. The issue was submitted in language almost identical with that used by the plaintiff in his pleading. We do not agree with the view of the Court of Civil Appeals that the method of submission was the same as submitting an issue of sole proximate cause with all other issues in the case conditioned on a negative answer thereto. It was analagous in many respects with the method of submission suggested in Eaton v. R. B. George Investments, Inc., 152 Texas 523, 260 S.W. 2d 587,592.

There was no other point of error before the Court of Civil Appeals requiring a reversal of the trial court's judgment. The judgment of the Court of Civil Appeals is therefore reversed and the judgment of the trial court is affirmed.

Opinion delivered July 7, 1954.

Rehearing overruled October 20, 1954.