Jim SIMON, Appellant,

v.

Sandra Elaine (Perry) WATSON, Appellee.

No. 5560.

Court of Civil Appeals of Texas, Waco.

Aug. 5, 1976.

Rehearing Denied Aug. 19, 1976.

William Andress, Jr., Andress, Woodgate & Lodewick, Dallas, for appellant.

R. Jack Ayres, Jr., Kelsoe, McDonald & Ayres, Dallas, for appellee.

## OPINION

JAMES, Justice.

This is a suit by a woman against a man for money and property growing out of and after the termination of an illicit relationship between them. Pursuant to a jury verdict favorable to the woman, the trial court entered judgment in favor of the woman, from which the man appeals. We affirm.

Plaintiff-Appellee Sandra Elaine Watson brought this suit against Defendant-Appellant Jim Simon, among other things, for certain real estate, a 1969 Rolls Royce automobile, a 1973 Jaguar automobile, and $100,000 actual damages, which prayer for relief included the setting aside of a purported letter agreement of February 12, 1973, as well as instruments whereby title to the two automobiles above referred to were assigned from her to him.

Sandra Elaine Watson's maiden surname was Perry, and she was an heiress of her grandparents' estate. She grew up in Lufkin, Texas, and when she was fifteen years of age her parents sent her to Hockaday School for Girls in Dallas, Texas. After completing her studies at Hockaday, she graduated from Southern Methodist University in Dallas. Shortly after graduation, she married a schoolday sweetheart; however, this marriage was unsuccessful and ended in divorce. Thereafter she lived alone in Dallas, her testimony showing she was lonely and depressed.

In December 1969 she met the Defendant Jim Simon who represented himself to be a successful business man who owned and operated "Jamie's," a chain of restaurants, and who drove a 1969 Rolls Royce automobile. After they dated for a time, they began living together. She testified that she was very much in love with him, and that he proposed marriage to her, and that she accepted; that he took over the management of substantially all of her money and business affairs; that he investigated her financial holdings and that of her family, and convinced her that her father was wrongfully withholding from her what was rightfully due her. She said that he told her he would see to it that she was protected and that she would get what was coming to her, and that he succeeded in isolating her from her family and what friends she had.

In August 1970, he conducted the purchase of a piece of residence real estate located at 5055 Lake Hill Court in Dallas, Texas, and took title thereto in Sandra's name. This is the real property in controversy which was sued for by Plaintiff-Appellee. Simon arranged for a $60,000.00 loan with First Federal Savings and Loan Association of Dallas to pay the purchase price. Additionally, a $10,000.00 loan with First Federal was made to pay for improvements on the Lake Hill Court property which was secured by a $10,000.00 certificate of deposit put up with Sandra's money. About a year later, when the $10,000.00 note came due, it was not paid, and First Federal foreclosed on the $10,000.00 certificate of deposit.

At or about the same time the Lake Hill Court property was purchased, Simon arranged for Sandra to put up another $10,000.00 certificate of deposit to secure a $10,000.00 note owing to the Bank of Dallas. The proceeds of this loan were used to build a swimming pool and to make other improvements on the Lake Hill Court property. Ultimately this note was not paid, and the Bank of Dallas foreclosed upon this $10,000.00 certificate of deposit.

The parties moved into and lived together in the Lake Hill Court property until Au-

gust 1972, when she moved out. She testified he forced her to leave, whereas he testified she left voluntarily.

In March of 1971, he told her he owed $35,000.00 on the Rolls Royce automobile in connection with the purchase thereof; whereupon she helped him get a $35,000.00 loan with the Lakewood Bank and Trust Company by purchasing with her money a $35,000.00 certificate of deposit with said Bank. Six months later, this note to the Lakewood Bank not having been paid, said Bank foreclosed upon this $35,000.00 certificate of deposit. The title of the Rolls Royce was put in Sandra's name. Not long after this, Simon bought a Jaguar automobile for $6100.00 and it is disputed how much of this was his money and how much was her money. At any rate, he had the title to the Jaguar put in her name. Later on, Simon got her to sign the titles on the Rolls Royce and Jaguar to his name, after which he mortgaged them for a $15,000.00 loan.

In addition to the above transactions, during the times material to this controversy, she put up a cashier's check for $10,296.79 to try to save Simon's residence property on Bowser Street in Dallas, Texas, from foreclosure; also, in August 1972 when she moved out of the Lake Hill Court place she signed two checks in blank. Simon made out one of these checks to his brother, Sam Simon, for $5,000.00 and the other was made out in his own children's name for $10,000.00. In addition thereto, through Simon's efforts, her money went into such things as house payments on the Lake Hill Court place, child support payments for Simon's children (he had been married and divorced), additional improvements on the Lake Hill Court place, and various living expenses.

To summarize these financial aspects, Plaintiff showed that during the time they lived together, there came into her hands $102,336.07, and by August of 1972 when she moved out of the Lake Hill Court place, all of this money was gone except $500.00.

The record shows that Simon was in serious financial difficulties from as far back as prior to the time he and Sandra met; that he had several lawsuits against him by creditors, some of which had been reduced to judgments. In some of these previous lawsuits he testified that he owned no interest in the Lake Hill Court property, the furniture and furnishings contained therein, the Rolls Royce, the Jaguar, or in any other property except some stock which proved to be of questionable value. Moreover, his testimony in these previous lawsuits was at serious variance with his income tax returns.

Plaintiff-Appellee testified that during her relationship with Defendant-Appellant, she was very much in love with him, but at the same time she was afraid of him; that sometimes he was nice and at other times he was mean to her; that he had told her of his underworld connections; that she was at all times under his domination and control partly out of love and partly out of fear. Her mental and emotional relationship toward Simon was corroborated by a Dr. John T. Holbrook, M. D., a psychiatrist who had examined her and who testified about these matters. Although she had studied business and accounting courses in school, she was yet emotionally unstable, which instability prevailed over what training and knowledge she may have possessed. Moreover, she had for most of her life prior to meeting the Defendant led a sheltered existence, first at home and later at college, and had never before been confronted with the harsh realities of life. Of course all of these aspects of the case were hotly disputed by the Defendant-Appellant.

On February 12, 1973, the parties signed a so-called "letter agreement" dated January 25, 1973, which had been prepared by Simon's attorney, and which purported to settle the property problems between the parties. This instrument will be hereinafter referred to as the "letter agreement", and reads as follows:

January 25, 1973

Miss Sandra Perry

                          Re:   Letter Agreement,
                                Loan Settlement

Dear Sandy:

If acceptable to you, this letter will serve as our agreement
concerning the repayment by men to you of the sum of $45,000,
plus interest.  As you know, you have loaned or expended the
sum of $45,000 in my behalf in connection with the purchase
of the premises occupied by me as a residence, same being
legally described as:

> BEING LOT 13 in BLOCK I/5544 of INWOOD PARK ESTATES, an
> Addition to the City of Dallas, according to map
> thereof recorded in Volume 801, Page 1758, Map Records
> of Dallas County, Texas.

In addition to the obligation I have with you, there is a lien
outstanding against said property in the principal sum of
$60,000 payable to the order of First Federal Savings and
Loan Association of Dallas, Dallas, Texas, which was executed
by you at the time this house was purchased.

In addition to your returning to me certain other documents
and titles, which I acknowledge receipt of, our agreement in
connection with the $45,000 is as follows:

1.   I acknowledge the advance by you in my behalf in the
     sum of $45,000, and my obligation to repay same to
     you.

2.   I agree to pay said amount in full on or before
     three (3) years from the date of execution hereof,
     ~~and subsequent to repayment thereof I agree to pay
     you interest thereon at the rate of seven percent
     (7%) per annum, said interest to be payable monthly.~~
     Said obligation will be evidenced by a note executed
     by me if desired by you.

3.   Upon repayment by me to you of the aforementioned
     $45,000 you agree to assign and convey to me all
     of your right, title and interest in the above
     described real property and to do all things
     reasonably necessary to transfer title thereto to
     me and to assist in my assuming the loan outstanding
     against said property.

If the foregoing is satisfactory and meets your approval, I
will appreciate your so indicating in the space provided
below, and upon your so acknowledging it is agreed between

us that this letter shall then constitute a valid and binding contractual agreement.

Very truly yours,

*Jim Simon*

JIM SIMON

AGREED TO AND EXECUTED
THIS ____12____ DAY OF
__February__, 1973

*Sandra Perry*

SANDRA PERRY

Witnessed by: *Buster Simon*

Feb. 12, 1973

---

Thereafter, on June 26, 1973, Sandra went down to a bank at Simon's request and transferred the title of the Jaguar over to Simon's name. Then on September 12, 1974 at his request she transferred the title of the Rolls Royce over to Simon's name. She testified that he told her that signing these papers had something to do with the insurance on these automobiles, and that she did not know that she was transferring the titles over in his name. Simon denied that he made any such representations to her.

At some time after their separation of August 1972, and before this suit was filed in November 1974, each of the parties married third parties. Sandra married a man named Watson, hence the name used by her in this litigation. The record does not show whom Simon married.

Trial was to a jury, which found:

(1) That Plaintiff executed the letter agreement as the result of undue influence by the Defendant;

(2) That she executed the letter agreement as the result of duress by the Defendant;

(3) That she executed the letter agreement as a result of Defendant's fraud;

(4) That she transferred the title to the Rolls Royce as the result of fraud by the Defendant;

(5) And as the result of undue influence by the Defendant;

(6) And as result of duress by the Defendant;

(7) That she transferred the title of the Jaguar to Defendant as the result of fraud by the Defendant;

(8) And as the result of undue influence by the Defendant;

(9) And as the result of duress by the Defendant;

(10) The jury failed to find that Plaintiff had made a gift to the Defendant of the household goods, furniture and furnishings at the Lake Hill Court property;

(11) That Plaintiff made payments to or for the Defendant other than the $35,000.00 paid for the Rolls Royce and the $20,000.00 paid for the house improvements;

(12) in the amount of $20,000.00.

Pursuant to and in harmony with the jury verdict, the trial court entered in favor of Plaintiff-Appellee Sandra Watson against Defendant-Appellant Jim Simon, which judgment contains the following:

(1) The court found as a matter of law that there was no consideration for Plaintiff's execution of the letter agreement, and that such agreement is void and unenforceable. Appellant has assigned no error to this finding by the trial court.

(2) That the Defendant is judicially estopped to assert any right to ownership of or title in the Lake Hill Court property or any improvements thereon, or to the furniture, furnishings, or accessories therein as a matter of law. Appellant has assigned no error to this finding by the trial court.

(3) Plaintiff was awarded title to the Lake Hill Court property, together with all improvements thereupon, subject to the existing lien against said property.

(4) Plaintiff was awarded title to the Rolls Royce and Jaguar automobiles, subject to the existing lien against same.

(5) The letter agreement was held to be null and void.

(6) Plaintiff was awarded title and possession of the furniture, furnishings and accessories located in the Lake Hill Court property, exclusive of Defendant's clothing and toilet articles.

(7) Plaintiff was awarded judgment against Defendant in the amount of $75,000.00 and costs.

From this judgment the Defendant-Appellant appeals on thirty-one points of error. We overrule all of Appellant's points and affirm the trial court's judgment.

■ By Appellant's points nine through twenty-six, inclusive, and twenty-nine and thirty, Appellant challenges the legal and factual sufficiency of the evidence supporting the jury's answers to Special Issues one through nine, inclusive, as hereinabove set out, wherein the jury found that Plaintiff executed the letter agreement and titles to the Rolls Royce and Jaguar as the result of undue influence, duress, and fraud on the part of the Defendant. Appellant also challenges the legal and factual sufficiency of the jury's answer of $20,000.00 to special issue No. 12 as the amount of money Plaintiff had paid to or for the Defendant over and above the $35,000.00 for the Rolls Royce and $20,000.00 paid for the house improvements. We overrule all these points of error. We have carefully examined the entire record as we are required to do, for a determination of these matters, and find that the evidence is legally and factually sufficient to support the jury's answers. We have hereinabove outlined and summarized the Plaintiff's evidence showing the comparative experience of the parties and their mental and emotional relationship to each other, and his domination and control over her and her money, all of which is legally and factually sufficient to support the jury's findings of undue influence, duress, and fraud on Defendant's part. There were many financial transactions between the parties, and between them and third parties, as evidenced by a 1073 page statement of facts and countless exhibits. As stated before, the evidence was hotly disputed. However, the jury had the right under this record to resolve these disputes in favor of the Plaintiff-Appellee, which they did.

■ With reference to the jury's answer of $20,000.00 to special issue No. 12, as monies paid by Plaintiff over and above the $35,000.00 for the Rolls Royce and $20,000.00 for real estate improvements: this finding is well within the range of the record. Without detailing all of the transactions, we have hereinabove detailed transactions wherein the Defendant caused Plaintiff to pay out approximately $100,000.00 to him or in his behalf. Therefore, the jury's finding of $20,000.00 is supported by legally and factually sufficient evidence.

Appellant contends the trial court erred in permitting Plaintiff-Appellee to file a trial amendment on the day the trial commenced and immediately before the trial started, setting up a claim for the contents

of the Lake Hill Court property. The Defendant levelled a special exception to paragraph IX of Plaintiff's pleadings, which exception was sustained and leave was granted Plaintiff to amend for sake of clarity; whereupon Plaintiff filed a trial amendment clarifying the monies advanced to the Defendant and in addition thereto alleged that she was the owner of the contents in the Lake Hill Court property. To this the Defendant filed a motion to strike these pleadings alleging surprise. We overrule this point of error for two separate and distinct reasons:

■ (1) Because we believe in paragraphs X and XIII of Plaintiff's pleadings as they existed prior to the trial amendment, that plaintiff had already prayed for a recovery of the house contents, and thereby Defendant was already on notice that he was required to defend against this claim.

■ (2) Because in view of the court's finding in the judgment that Defendant was judicially estopped to assert any rights in the house contents, of which action no complaint is made by Appellant on appeal, any error that existed by the trial court's permitting Plaintiff's trial amendment is moot. The filing of a trial amendment is within the sound discretion of the trial court, and unless the trial court clearly abuses that discretion, no reversible error is shown. Rule 66, Texas Rules of Civil Procedure; *Victory v. State* (Tex.1942) 138 Tex. 285, 158 S.W.2d 760. Also see *Westinghouse Electric Corp. v. Pierce* (Tex.1954) 153 Tex. 527, 271 S.W.2d 422.

■ Appellant's next complaint is the refusal of the trial court to permit him to file a trial amendment setting up the two year statute of limitation concerning the house contents and all monies advanced to Defendant-Appellant by Plaintiff-Appellee in excess of $55,000.00. Defendant offered this trial amendment after both sides had rested, the testimony was closed, and the jury recessed until the next morning for jury argument. The case had been tried without reference to any statute of limita-

tions, and had the trial court permitted the filing of this trial amendment, it would have changed the complexion of the trial and would have necessitated the production of additional testimony, the length and amount of which is uncertain. In the language of our Supreme Court: "To require the trial court to permit amendments such as the one filed in this case would disrupt orderly procedure and lead to frequent interruptions and interminable delay in concluding expensive jury trials." *Westinghouse Electric Corp. v. Pierce* (Tex.1954) 153 Tex. 527, 271 S.W.2d 422; *King v. Skelly* (Tex.1970) 452 S.W.2d 691 (wherein the trial amendment was offered after the evidence had closed, but before the draft of the court's charge had been submitted to the counsel for the parties to review). Here again, insofar as the house contents in the case at bar are concerned, the trial court's finding (in the judgment) of judicial estoppel against Defendant-Appellant renders Defendant's trial amendment moot.

■ Appellant complains of the admissibility of the testimony of Dr. John T. Holbrook, M.D., a psychiatrist, asserting that his testimony invaded the province of the jury. We overrule this contention. Dr. Holbrook testified that he examined Plaintiff-Appellee on two occasions for a total of four hours about a week prior to the trial; that in these examinations he went into Plaintiff's relationship with Defendant; that the sum and substance of the doctor's testimony was that she had originally fallen in love with the Defendant and had hoped the relationship would lead to marriage; that she in time developed a sense of fear toward Defendant; that Defendant dictated to her and caused her to do things she ordinarily would not have done, such as her manner of dressing and becoming isolated from her family and friends. For example, Defendant prevailed upon her to have surgery wherein injections were made into her breasts to have them enlarged, he having told her he did not like flat-chested women. Dr. Holbrook testified that the turning point came in their relationship when her

money ran out, at which time her desperation and confusion began to increase; that Plaintiff told the doctor that about this time she had long episodes of crying and being hysterical with tendencies toward suicide from time to time; that in light of this background of the relationship between the parties, she would have signed anything that Defendant Simon put in front of her without regard to her free will, and that this state of mind of Plaintiff existed at the time she signed the letter agreement as well as at the time she signed the papers transferring the titles to the Jaguar and the Rolls Royce. In summary, Dr. Holbrook's testimony supports the jury's findings of undue influence, fraud, and duress at the times she signed the letter agreement and transfers of car titles. The doctor also testified that in his opinion she was truthful and honest with him in his evaluation of her and told him the truth "as she understood it" during the examinations, and that he was concerned with whether she was honest with him in these examinations rather than whether she told the truth in this lawsuit.

Appellant's chief complaint about Dr. Holbrook's testimony is the part wherein he testified that in his opinion the Plaintiff was being honest with him, for the stated reason that this invaded the province of the jury. We see no error in the admissibility of Dr. Holbrook's testimony, since as a qualified expert in psychiatric matters he had the right to give his expert opinion on Plaintiff's honesty concerning the examinations. See *Carr v. Radkey* (Tex.1965) 393 S.W.2d 806.

■ As stated before, the trial court made two findings in its judgment which are not challenged by Appellant, to wit: (1) That there is no consideration as a matter of law for Plaintiff's execution of the letter agreement, and that said agreement is null and void, and (2) that the Defendant is judicially estopped to assert any right to ownership of or title in the Lake Hill Court property, the improvements thereupon, and the furniture and furnishings therein. Since these findings are not challenged, they stand, and Appellant has waived any right to complain of them. Rule 418, Texas Rules of Civil Procedure; *State Farm Mutual Automobile Insurance Co. v. Cowley* (Tex.1971) 468 S.W.2d 353; *Gibson v. Hines* (Waco CA 1974) 511 S.W.2d 546, no writ.

Appellant has other points and contentions. We have carefully considered each one of them and find that none present reversible error. All are overruled.

Judgment of the trial court is therefore affirmed.

AFFIRMED.