SAM MARKMAN and NATIONAL PRODUCE DISTRIBUTORS, INC., a copartnership, d/b/a MARKMAN NATIONAL FARMING COMPANY, et al., appellants, v. HERBERT HOEFER, d/b/a BUILDING PRODUCTS COMPANY, appellee.

No. 50049.

(Reported in 106 N.W.2d 59)

November 15, 1960.

F. J. MacLaughlin, of Davenport, for appellants.

McDonald & McCracken, of Davenport, for appellee.

GARFIELD, J.—For convenience we refer to Sam Markman as plaintiff and disregard the fact he acted in part for two partnerships of which he was a member, both of which, together with the partners, are joined as plaintiffs.

This is a law action in four counts, tried to the court without a jury, to recover damages for alleged defective construction by defendant of a building used for curing and storing onions grown by plaintiff. The building was constructed in July, August and September 1956, under a written contract dated July 12. Counts I, III and IV each claim $102,232 for loss of 37,663 bushels of onions grown by plaintiff in 1957 and placed in the building with the rest of the crop. Count II claims $15,000 for past and future repairs and changes on the building.

At the conclusion of plaintiff's evidence the trial court sustained what the record designates defendant's "Motion for Directed Verdict" as to Counts I, III and IV and overruled it

as to Count II. Defendant then testified in support of his counterclaim to recover for extras not included in the contract but offered no evidence in defense of plaintiff's Count II. Later the trial court entered judgment for plaintiff on Count II for the cost of repairs to the building, amounting to $2046.59, reduced by $626 which was awarded defendant on his counterclaim. Plaintiff has appealed but does not dispute the allowance to defendant of $626.

The building in question consists of two parallel warehouses, each 45 by 225 feet, with an "air tunnel" between them. At each end of the tunnel is a large fan. Air ducts lead from the tunnel into each warehouse near the floor. Air from the ducts is thus forced underneath the onions and up into them to help cure and dry them for storing and marketing.

Principal claim of defective construction is in the roof of the tunnel which is nearly horizontal and two to three feet below the nearest eave of each warehouse roof. The warehouse roofs are the familiar inverted V type. The tunnel roof is of plywood covered with tar paper. There is much uncontradicted evidence that openings were left between many of the plywood sections and there was a space up to an inch in width between the outer edges of the plywood and the adjoining warehouse walls. There is also evidence that the warehouse roofs did not overhang, and in places did not even meet, the vertical wall. These defects caused the roof of the tunnel and the adjoining edges of the roof of each warehouse to leak water when it rained and caused air pressure to escape constantly from the tunnel so proper drying, temperature and air circulation could not be maintained.

About June 1958 plaintiff, after numerous complaints to defendant of the above conditions, engaged men to remove the tar paper from the tunnel roof, cover the plywood with another layer thereof and apply new tar paper. Cost of this was $2046.59 which the trial court allowed plaintiff, less the cost of extras furnished by defendant, as previously stated.

I. Plaintiff first assigns error in the sustaining of defendant's motion for directed verdict on his Counts I, III and IV. One reason urged in support of the assignment is that the

ground on which it is said the ruling was based—that loss of the onions was not within the contemplation of the parties as likely to follow from a breach of the contract—was not stated in the motion.

It appears that at least the principal basis for the trial court's ruling is that the parties did not contemplate loss of the onions as likely to result from breach of the contract. Defendant says in argument, "Undoubtedly the real reason underlying this decision rested upon the fact appellant did not anticipate this loss would result. * * * Was this loss contemplated by the parties at the time of entering into the contract?" It is true, as plaintiff asserts and defendant conceded in oral argument here, the motion to direct (or to dismiss) contained no such ground.

Grounds of the motion as to Counts I and II were 1) that no breach of the contract has been shown and 2) by accepting the building in September 1956, and paying the contract price in January 1957, with full knowledge of all breaches alleged, plaintiff waived his claim for damages. It is clear the trial court's ruling dismissing Counts I, III and IV was not based upon either of these grounds. The motion could not have been overruled as to Count II and recovery allowed thereon if either of the stated grounds were good.

We think plaintiff's first assigned error must be sustained. We have consistently held the sustaining of a motion to dismiss or for directed verdict will not be approved here upon a ground not asserted in the trial court. American Mut. Liab. Ins. Co. v. State Auto. Ins. Assn., 246 Iowa 1294, 1303, 72 N.W.2d 88, 93, and citations; Herbst v. Treinen, 249 Iowa 695, 702, 88 N.W.2d 820, 824.

Although we express no opinion as to the unasserted ground on which the motion was evidently sustained as to Counts I, III and IV, it is apparent defendant would be in better position here if such ground had been stated in support of the motion in the trial court or if it had been decided as a fact question that the claim for loss of the onions was not within the contemplation of the parties. But the effect of the ruling is that such claim was not considered as a fact question but was dismissed as a matter of law on a ground not asserted.

II. It is well settled that a party may, without appealing, rely in this court upon any ground he asserted in the trial court in support of a motion to dismiss or direct verdict even though the motion was not sustained on such ground. Shaw v. Addison, 236 Iowa 720, 733, 734, 18 N.W.2d 796, 803, 804, and citations; Emmert v. Neiman, 245 Iowa 931, 934, 65 N.W.2d 606, 608; Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1064, 1065, 82 N.W.2d 781, 788. However this does not aid defendant insofar as Count I was dismissed on motion.

III. In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose. Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., 7 Cir., Ill., 111 F.2d 875, 878, 879; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp., 10 Cir., Okla., 49 F.2d 146, 149; Rehr v. West, 333 Ill. App. 160, 76 N.E.2d 808; Jose-Balz Co. v. DeWitt, 93 Ind. App. 672, 176 N.E. 864; 17 C. J. S., Contracts, section 329, note 53. See also Hill v. Polar Pantries, 219 S. C. 263, 64 S.E.2d 885, 888, 25 A. L. R.2d 1080, 1084; Smith & Nelson v. Bristol, 33 Iowa 24.

There is substantial evidence the roofs of the tunnel and of each warehouse were not constructed in a good and workmanlike manner in the respects heretofore noted. Hence the ruling on defendant's motion may not be upheld on the first ground asserted—that no breach of the contract was shown.

IV. As stated, second ground of defendant's motion was that by accepting the building and paying the contract price with knowledge of the alleged breaches plaintiff waived his claim for damages.

The pleadings raised no issue of waiver. The defense is one which defendant was required to plead. Rule 101, Rules of Civil Procedure; Schmid v. Automobile Underwriters, 215 Iowa 170, 173, 244 N.W. 729, 85 A. L. R. 4, 7, and citations; Annotation, 120 A. L. R. 8, 37 et seq.

Defendant's avoidance of his failure to plead waiver is that the issue was litigated without objection and hence was in

the case by consent or acquiescence. It is true plaintiff was cross-examined as to his occupancy and use of the building and payment of the contract price after he knew of the defective construction of the roofs. And the record shows no objection by either side to any offered evidence. We therefore disregard defendant's failure to plead waiver. Andrew v. Miller, 216 Iowa 1378, 1381, 1382, 250 N.W. 711, and citations; Wilson v. Corbin, 241 Iowa 593, 605, 606, 41 N.W.2d 702, 709, and citations; Cuthbertson v. Harry C. Harter Post No. 839, 245 Iowa 922, 929, 65 N.W.2d 83, 88; Annotation, 120 A. L. R. 8, 87.

■ We think it does not appear as a matter of law, under the circumstances here, that plaintiff waived his claim for damages by his occupancy and use of the building and payment of the contract price. The issue was one of fact, not of law. We must view the evidence in the light most favorable to plaintiff in considering the ruling on the motion.

The evidence is that plaintiff first learned something was wrong with the building after his men started putting the 1956 crop in it. Plaintiff called defendant who plugged holes in the steel studding, but that did not stop the air leakage. Plaintiff first learned water was coming through the tunnel roof and down the walls of the warehouses in the winter of 1956-7 or right after the first of the year. He reported this condition to defendant who repeatedly promised to remedy the condition.

This is part of plaintiff's redirect examination: "He promised to take care of any defects and to complete the work and I believed what he told me and relied on it. He never performed those promises. Before we started to put our 1957 crop into the warehouses he kept promising right along that he would take care of any defects and we used the warehouses in reliance on his promises. I thought he was reliable." He also said: "When I started to use the buildings, I didn't accept them 'as is'. I put the onions into the warehouses because there was too much risk in leaving them in the field."

It does not appear—at least not as a matter of law—plaintiff knew of the defects in construction when he first occupied the building in September 1956, by placing onions therein. The

record warrants a finding that plaintiff continued to occupy the building and paid the contract price on January 9, 1957, in reliance on defendant's agreement that the defects of which complaint is now made would be remedied. That plaintiff did not, under the circumstances, waive his claim for damages as a matter of law see Leonard v. Home Builders, 174 Cal. 65, 161 P. 1151, L. R. A. 1917C 322; Hansen v. Walker, Iowa, 135 N.W. 653; Jose-Balz Co. v. DeWitt, supra, 93 Ind. App. 672, 176 N.E. 864; Robb v. Booms, 337 Mich. 583, 60 N.W.2d 469, 472; Karlinski v. P. R. & H. Lbr. & Constr. Co., 68 N. D. 522, 281 N.W. 898, 900; Johnson v. Pugh, 110 Wis. 167, 85 N.W. 641. See also 9 Am. Jur., Building and Construction Contracts, section 54, page 41.

"* * * according to the weight of authority, the mere occupancy and use do not constitute an acceptance of the work as complying with the contract, or amount to a waiver of defects therein." 9 Am. Jur., Building and Construction Contracts, section 53, page 40. To like effect is 17 C. J. S., Contracts, section 514b(4), page 1105, which also states, "of course, if the acceptance of the work is expressly on condition that the builder remedy certain defects therein, the owner is not precluded from claiming damages for such defects." See also Corwin v. Wallace, 17 Iowa 374.

In Houlette & Miller v. Arntz, 148 Iowa 407, 126 N.W. 796, and Saldal v. Jacobsen, 154 Iowa 630, 135 N.W. 18, cited by defendant, the owner evidently settled with the builder without any agreement by the latter to remedy the known defects and without the mitigating circumstances shown here. This is also true of Milaeger Well Drilling Co. v. Muskego Rendering Co., 1 Wis.2d 573, 85 N.W.2d 331, 66 A. L. R.2d 563, which holds a partial or total payment on a building contract with knowledge of a defect constitutes a waiver of such defect, in the absence of any other circumstances mitigating against such a waiver. See also annotation, 66 A. L. R.2d 570.

V. The trial court assigned as one reason for sustaining defendant's motion to direct verdict the rule that where a purchaser knows an article or building is defective but continues in its use he cannot recover consequential damages that proximately flow from such continued use. In such case his negli-

gence—or, as some authorities state, his assumption of risk—precludes recovery for damages that subsequently accrue. See Nelson v. Anderson, 245 Minn. 445, 72 N.W.2d 861, 865, 866, and citations. With reference to this it is sufficient to say no such ground was asserted in support of the motion nor was such an issue pleaded.

VI. Plaintiff's third and fourth counts allege respectively an express warranty and an implied one that the building and equipment therein would be fit for the purpose of curing and storing onions and that such warranties were breached. The separate grounds of defendant's motion for directed verdict on these grounds were (1) there is no evidence of any such warranty, (2) assuming an implied warranty, plaintiff could not reasonably rely upon any statements of defendant because of plaintiff's superior knowledge of the requirements for curing and storing onions and (3) any defect in the building is because of the plans and specifications for which defendant was not responsible.

There is no evidence of an express warranty and Count III was properly dismissed upon the first of these grounds.

We think dismissal of Count IV cannot be upheld upon any of these grounds. However, this part of the ruling may not have been prejudicial to plaintiff in view of the conclusion expressed in Division III hereof that there was an implied undertaking to erect the building in a reasonably good and workmanlike manner and reasonably fit for its intended purpose. It seems unimportant whether or not this is called an implied warranty.

This contract was not for the sale of goods. Therefore section 554.16, Code, 1958, of our Sales Law, which provides for implied warranties of quality in the sale of goods, is not applicable. Ladd v. Reed, 320 Mich. 167, 30 N.W.2d 822, 824; 17 C. J. S., Contracts, section 342, page 796. Nevertheless many of the decisions refer to the implied undertaking previously mentioned as an implied warranty. Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., supra, 7 Cir., Ill., 111 F.2d 875, 878, 879; Hill v. Polar Pantries, supra, 219 S. C. 263, 64 S.E.2d 885, 888, 25 A. L. R.2d 1080, 1084; 17 C. J. S., Contracts, section 329, page 781.

VII. As previously stated, the trial court overruled defendant's motion as to plaintiff's Count II, considered the issues on their merits and held plaintiff was entitled to recover on this count $2046.59 paid by him for a new roof on the tunnel, less the cost of certain extras furnished by defendant. Plaintiff complains this award to him is inadequate and it was error not to allow the added sum of $2450 to complete repairs on the building.

This last figure is the estimated cost of putting strips on top of the rebuilt tunnel roof, covering them with another layer of plywood and a double layer of roofing. One of the men who put on the new layer of plywood and roofing, as before explained, testified this additional roof was necessary for a good sound roof. However, he was unable to explain why this second roof was needed except that it would be better. The evidence is that after the roof was rebuilt it did not leak water or air and proper temperature and air circulation have been maintained.

The court was not compelled to allow this additional $2450. The plans do not call for this second new roof. Of course the burden rested on plaintiff to prove the damages to which he was entitled under Count II. The effect of plaintiff's argument on this point is that he was entitled as a matter of law to recover this added amount. We have frequently pointed out that in the absence of an admission by his adversary it is not often a party who has the burden of proof on an issue establishes his claim as a matter of law. Williams v. Stroh Plumbing & Electric, Inc., 250 Iowa 599, 601, 94 N.W.2d 750, 752, and citations; Roth v. Headlee, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924, and citation.

The case is not reviewable here de novo but only upon assigned errors. Rule 334, Rules of Civil Procedure; Ruble v. Carr, 244 Iowa 990, 993, 59 N.W.2d 228, 230, and citations; Dougherty v. City of Sioux City, 246 Iowa 171, 191, 192, 66 N.W.2d 275, 286, and citations. The court's findings of fact have the effect of a jury verdict. Ibid. In considering the ruling on defendant's motion it was our duty to view the evidence in the light most favorable to plaintiff. However, in

considering the judgment on Count II it is our duty to view the evidence in the light most favorable to the judgment. Ibid; Staley v. Fazel Bros. Co., 247 Iowa 644, 648, 649, 75 N.W.2d 253, 255, and citations.

We deem comment on other contentions made in the briefs unnecessary. None has been overlooked. The foregoing disposes of the appeal.

The judgment as to plaintiff's Count II and defendant's counterclaim and dismissing plaintiff's Count III is affirmed. Insofar as the judgment is based on the dismissal, on defendant's motion, of plaintiff's Counts I and IV it is reversed and this part of the case is remanded for further proceedings not inconsistent with this opinion.

Three fourths the costs of this appeal are taxed to defendant, one fourth to plaintiff.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur.