**J. R. STOVER, Appellant,**

**v.**

**Marvin HINDMAN and Fredona Hindman, Appellees.**

**No. 52943.**

Supreme Court of Iowa.

June 11, 1968.

Coonley & Coonley, Hampton, for appellant.

Finley & Teas, Mason City, for appellees.

MOORE, Justice.

This is an action at law asserting claims in two counts. In Count I plaintiff, J. R. Stover, a real estate broker, claims a commission for procuring a purchaser for defendants' farm. In Count II he asserts a claim for damages against defendants for an alleged conspiracy to defeat his right to said commission. After plaintiff rested his case in chief, the trial court sustained defendants' motion for a directed verdict as to both counts. Plaintiff has appealed. We affirm.

The facts are for the most part undisputed. The deposition of each defendant was read into the record as part of plaintiff's case. In considering the propriety of the directed verdict for defendants we view the evidence in the light most favorable to plaintiff. Rule 344(f) 2, Rules of Civil Procedure.

Plaintiff, a licensed real estate broker with offices in Hampton, put an ad in the Mason City newspaper stating he had clients interested in buying a farm or farms in Cerro Gordo County. In response to a letter from defendant Marvin Hindman plaintiff visited with Hindman and his wife Fredona about selling their 207 acre farm for them. There was talk from time to time that defendants wanted as high as $525 per acre but ultimately it was orally agreed they wanted $100,000 net and plaintiff's commission would be any amount he obtained over $100,000 for the farm. This oral listing was made in September 1963. It was not an exclusive listing. Between September 1963 and December 1964 plaintiff, other brokers and defendants themselves showed the farm to various prospects.

Plaintiff's prospects included his brother Fred Stover of Des Moines who owned a 240 acre farm in Cerro Gordo County. There was some discussion with defendants concerning Fred buying on contract or a trade of farms.

During the evening of December 10, 1964 plaintiff and his brother Fred drove to defendants' farm. They first went to the farmhouse and talked with Mrs. Hindman before going to the barn to see Mr. Hindman. She informed them Carl Barkema had offered $99,500 for the farm. Later at the barn Mr. Hindman stated he wanted a cash sale and not a contract. Fred then said: "That's o.k., I will pay you cash $500 an acre." Hindman made no reply and seemed concerned about Mr. Barkema who had arrived at the farm shortly after plaintiff and his brother. Fred then said "I will give you your price." To which Mr. Hindman after considerable hesitation replied: "Well, all right."

Fred testified: "I said I am ready to give you a check and then my brother Rudy said well don't give him the check give me the check and then have Mr. Hindman come in in the morning and we will make out the papers." Plaintiff testified Hindman stated he would come into Hampton to plaintiff's office, "if nothing happens."

Plaintiff and his brother then returned to Hampton where plaintiff prepared an offer to buy which provided for a down payment of $5000 and the balance on March 1, 1965 when according to the offer possession was to be given. These proposed terms were never discussed with de-

fendants although in earlier discussion March 1 had been mentioned as possession date. Fred on signing the offer issued his check of $5000 drawn on a Des Moines bank. It was made payable to defendants. Later that night plaintiff telephoned Hindman and was told defendants had sold the farm to Barkema for $101,000.

Fred Stover testified he did not have $5000 in the bank on December 10 but he had borrowed money from the bank in the past and felt confident he could do so again. He also related his property holdings and stated he would have been able to pay the balance by March 1. He further testified he believed cash meant $5000 down and the balance due the following March 1. Defendants' written contract with Barkema included a requirement he pay $10,000 down.

Defendants' motion for directed verdict asserted plaintiff had failed to prove by any competent evidence the essential elements of his case and then set out in eight paragraphs various specific grounds in support thereof. The trial court stated the motion was sustained on the grounds, (1) plaintiff failed to prove the terms of the listing agreement in essential matters, (2) plaintiff failed to show he produced a buyer willing to purchase on the terms of the sellers and (3) there was no evidence whatsoever of conspiracy.

I. Plaintiff's first assigned error is the trial court failed to comply with rule 118, R.C.P., which requires separate ruling on each ground of a motion, and sustained it on grounds not raised therein.

■ The trial court did not rule specifically on each ground asserted in the motion but the record does not support plaintiff's contention it was sustained on grounds not asserted. It would have been better had the trial court followed rule 118 and specifically treated each ground of the motion. Failure to do so does not here constitute reversible error. Gorman v. Adams, 259 Iowa 75, 143 N.W.2d 648, 650; Williams v.

Larsen Construction Co., 255 Iowa 1149, 1153, 125 N.W.2d 248, 250.

■ We have consistently held the sustaining of a motion to dismiss or for directed verdict will not be approved here upon grounds not asserted in the trial court. Winneshiek Mut. Ins. Ass'n v. Roach, 257 Iowa 354, 365, 132 N.W.2d 436, 443; Markman v. Hoefer, 252 Iowa 118, 122, 106 N.W.2d 59, 62, and citations.

■ Another well settled rule is that a party may, without appealing, rely in this court upon any ground he asserted in the trial court in support of a motion to dismiss or direct verdict even though the motion was not sustained on such ground. Boyer v. Iowa High School Athletic Ass'n, 258 Iowa 285, 291, 138 N.W.2d 914, 917; Strang v. Frink, 257 Iowa 1106, 1108, 135 N.W.2d 103, 104; Markman v. Hoefer, 252 Iowa 118, 123, 106 N.W.2d 59, 62, and citations.

■ Our study of the record reveals defendants in their long motion for directed verdict did sufficiently raise the claim plaintiff had failed to prove the listing agreement in essential matters and specifically stated plaintiff had failed to show he had produced a buyer willing to purchase on defendants' terms. In paragraph 8 defendants pointed out there was no proof whatsoever of conspiracy as alleged in Count II of plaintiff's petition. Plaintiff's first assigned error is untenable.

■ II. The trial court properly directed a verdict against plaintiff on Count I as the listing agreement contained no ᐧterms under which defendants would sell and because of plaintiff's own intervention there was no meeting of the minds between Hindman and Fred Stover as to the terms of a cash sale. Fred's conception of such a sale was never related to either defendant. Time and method of payment, interest, responsibility for real estate taxes and special assessments, insurance, and whether an abstract of title was to be furnished

were not mentioned. Under the facts it is understandable why plaintiff, an experienced broker, returned to his office and prepared what he thought his brother's offer to buy should contain. That offer was never formally presented to defendants as they had already sold to Barkema.

■ Before plaintiff would be entitled to a commission he had the burden of establishing he had produced a buyer ready, willing and able to purchase upon the terms specified in a listing agreement or upon terms which the defendants were willing to accept. Iowa Securities Co. v. Schaefer, 256 Iowa 219, 224, 126 N.W.2d 922, 925; Blunt v. Wentland, 250 Iowa 607, 611, 612, 93 N.W.2d 735, 737, 738, and citations.

12 Am.Jur.2d, Brokers, section 187, page 929, states:

"Effect of incompleteness of terms given broker. Where the listing agreement fails to fix the terms for the sale or exchange of property, or specifies only part of the terms with the understanding that further details are subject to negotiation between the principal and the customer, the principal has been held free to terminate the negotiations without liability to the broker. Moreover, in such a case the broker may be denied compensation unless he produced a customer ready, able, and willing to buy on such terms as the principal may require, or as he accepts, or unless the principal and the customer reach a definitive oral or written agreement." For similar statements see 12 C.J.S. Brokers § 85 a, page 187; Restatement, Second, Agency, section 445d, page 347.

■ III. A conspiracy is a combination of persons to accomplish an unlawful purpose or a lawful purpose unlawfully, and it may be proven by circumstantial evidence. Weber v. Paul, 241 Iowa 121, 126, 40 N.W.2d 8, 11; Shannon v. Gaar, 233 Iowa 38, 44, 6 N.W.2d 304, 308; 15A C.J.S. Conspiracy § 1; 16 Am.Jur.2d, Conspiracy, sections 1, 36, 59.

■ From our review of the record we find the trial court's ruling there is no evidence of a conspiracy is correct. Plaintiff had earned no commission. Defendants sold to another buyer as plaintiff was aware they had a right to do.

We conclude the trial court properly directed a verdict against plaintiff upon each count of his petition.

Affirmed.

All Justices concur except MASON, J., who takes no part.