Bobby L. MEEKS, Individually and d/b/a Barco, Appellant,

v.

Benny E. BELL and Wife, Glenda Bell, Appellees.

No. 2–85–138–CV.

Court of Appeals of Texas, Fort Worth.

June 4, 1986.

Joseph W. Stewart, Arlington, for appellant.

Henderson Bryant & Wolfe and Ronald H. Clark, Sherman, for appellees.

Before FENDER, C.J., and HILL and ASHWORTH (Retired, Sitting by Assignment) JJ.

## OPINION

FENDER, Chief Justice.

This is an appeal from appellees' recovery of treble damages under the 1973 version of the Deceptive Trade Practices—Consumer Protection Act caused by fire destruction of their home and its contents on April 4, 1982. The heat pump alleged to be responsible for the fire had been sold and installed by appellant, Meeks, for a previous owner of the premises on February 28, 1977. We reverse and render judgment for appellant.

The cause, filed in 1982, proceeded to a jury trial in 1985 upon the Bells' allegations of negligence and breach of express and implied warranty. Meeks had installed a heating and air conditioning unit in the closet of the home. It was claimed that Meeks negligently failed to secure the heat pump unit to the floor and failed to secure the power cable leading to the unit with proper clamps, thus permitting vibration which caused deterioration of the cable insulation and a short circuit, resulting in the fire. The same failure to secure the heat pump and power cable was alleged as constituting a breach of an express and implied warranty of safe and proper installa-

tion of the unit under TEX.BUS. & COM. CODE ANN. sec. 17.50(a)(2)&(3)(Vernon Supp. 1986) (dealing with (2) breach of an express or implied warranty; and (3) any unconscionable action or course of action by any person). One count in the petition alleged product defect and claimed that a defective condition of the installed unit existed in that it was "improperly secured or mounted" when it was installed in the closet and the power cable was not properly clamped or supported.

On the last day of trial, after all of the evidence was in, the Bells offered a trial amendment containing the following assertions:

Plaintiffs would show that the factual allegations upon which this amendment is [sic] based have already been set out in Plaintiffs' Second Amended Petition and that Plaintiffs' request is only to properly allege a statutory basis for recovery upon those facts.

1. Plaintiff's requested amendment is as follows:

Plaintiffs assert that Defendant's action in representing that the heat pump unit and power cable he sold and installed were safe and were properly installed, when in fact said power cable and unit were not properly installed was a violation of DTPA sec. 17.46(5),[1] representing that goods or services have characteristics which they do not have.

Leave to file the amendment was denied at that time and the cause was submitted to a jury.

Significant special issues and their answers follow:

QUESTION 1:

Was the closet unit of the heat pump defective at the time it left the possession of Bobby Meeks by reason of Bobby Meeks' failure, if any, to properly secure and support the power cable with clamps, or his failure, if any, to properly secure the unit inside the closet?

Answer "yes" or "no" with respect to each of the following:

A. Failure to properly secure and support the cable with clamps

Answer:    No

B. Failure to properly secure the unit

Answer:    No

[definitions omitted]

QUESTION 3:

Was the closet unit, as installed by Bobby Meeks, unsafe for the ordinary purposes for which such units are used?

Answer "yes" or "no"

Answer:    Yes

If you have answered Question 3 "yes," and only in that event, then answer the following Question.

QUESTION 4:

Was that unsafe condition a proximate cause of the fire in question?

Answer "yes" or "no"

Answer:    Yes

QUESTION 5:

In his installation of the closet unit in question, did Bobby Meeks fail to secure the power cable in place?

Answer "yes" or "no"

Answer:    No

QUESTION 8:

In his installation of the closet unit in question, did Bobby Meeks fail to secure the unit in place?

Answer "yes" or "no"

Answer:    No

QUESTION 16:

Do you find that Plaintiffs failed to inspect and maintain the heat pump unit as persons using ordinary care would have done?

Answer "yes" or "no"

Answer:    No

Such jury findings effectively eliminated recovery based upon negligence, products

---

1. TEX.BUS. & COM.CODE ANN. sec. 17.50(a)(1) provides that a consumer may maintain an action where the use or employment by any person of a false, misleading or deceptive act or practice that is specifically enumerated in sec. 17.46(b), is a producing cause of actual damages. Sec. 17.46(b)(5) deals with "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...."

liability and unconscionability, thus leaving only the question of breach of warranty. However, it is seen that the very acts on the part of Meeks which were claimed to constitute a breach of warranty were negated by the jury's findings that he did not fail to secure the unit nor the power cable.

After Meeks filed a motion to disregard the findings as to special issues 3 and 4 and for judgment in his favor, the Bells filed their motion re-urging the previously offered trial amendment and asking for judgment on the verdict in their favor. The trial court allowed the profferred amendment to the pleadings and entered judgment in the amount of $211,893.08, including attorneys' fees and pre-judgment interest. It is not clear whether judgment was entered for breach of warranty or for misrepresentation.

Meeks brings forward the following points of error:

### POINT ONE

THE TRIAL COURT ERRED IN GRANTING APPELLEES' TRIAL AMENDMENT AFTER THE VERDICT WAS RECEIVED BY THE COURT FOR THE REASON THAT SAID AMENDMENT ALLEGED A NEW CAUSE OF ACTION WHICH SUBSTANTIALLY CHANGED THE NATURE OF APPELLEES' SUIT.

Subpoint A.–There was no evidence, or in the alternative, insufficient evidence, to support the proferred trial amendment.

Subpoint B.–At the time of the granting of Appellees' trial amendment, the issue raised therein had not been tried by consent.

### POINT TWO

THE TRIAL COURT ERRED IN ENTERING A JUDGMENT BASED UPON THE JURY'S ANSWERS TO SPECIAL ISSUES THREE AND FOUR FOR THE REASON THAT SAID ISSUES ARE AN IMPROPER SUBMISSION OF A BREACH OF WARRANTY ACTION AND CANNOT SUPPORT A JUDGMENT AS A MATTER OF LAW.

### POINT THREE

THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN FAVOR OF APPELLEES BECAUSE A BREACH OF WARRANTY ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

### POINT FOUR

THE TRIAL COURT ERRED IN ENTERING A JUDGMENT BASED UPON THE JURY'S ANSWERS TO SPECIAL ISSUES THREE AND FOUR FOR THE REASON THAT SAID ISSUES ARE AN IMPROPER SUBMISSION OF A CAUSE OF ACTION ARISING UNDER sec. 17.46, (b)(5) OF THE DTPA.

In sustaining point of error number one, we are mindful of the rule, to which Meeks concedes, that the question of permitting a trial amendment is directed to the sound discretion of the trial court and its decision will not be disturbed on appeal unless it clearly appears that there was an abuse of discretion. *Vermillion v. Haynes*, 147 Tex. 359, 215 S.W.2d 605, 609 (1948). An abuse of discretion is shown, however, where the objecting party is prejudiced in maintaining his defense. TEX.R.CIV.P. 66. In the recent case of *Banctexas Dallas, N.A. v. Cornwell*, 683 S.W.2d 104 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) it was said "[l]eave to file a trial amendment, after the close of evidence, which effectively changes a theory of recovery, is improper," citing *Burroughs Corp. v. Farmers Dairies*, 538 S.W.2d 809 (Tex.Civ.App.—El Paso 1976, writ ref'd n.r.e.). *Id.* at 106. In the latter case is found quoted language of Chief Justice Calvert from a 1954 case as follows:

[t]he defendants had a right to assume that the case as made by the pleadings and testimony was the case and the only case they were called upon to defend and to prepare their defense accordingly. (Citing authorities).... *See Westing-*

*house Electric Corp. v. Pierce,* 153 Tex. 527, 271 S.W.2d 422 (1954).

*Id.*

At the time the trial amendment was offered, the case had been tried upon the theory that Meeks had failed to properly secure the heat pump unit and/or the power cable, to install it properly. Each count of the pleadings, negligence, product liability, warranty, and unconscionability was founded upon Meeks' alleged failure in those regards. The sole grounds upon which recovery was sought in the way of treble damages under the DTPA were the breach of warranty grounds set forth in sec. 17.50(a)(2), which we will later find to be barred by limitations, and the unconscionability allegations under sec. 17.-50(a)(3) which were never submitted to the jury.

During the two years following the filing of the original petition, and through two amendments, there had been no hint of a DTPA claim of misrepresentation. Depositions had been taken from both Meeks and Donald Gilbert Navarro, the former owner who purchased the heat pump from Meeks. The Bells introduced Navarro's deposition testimony concerning any possible misrepresentation by Meeks as follows:

Q. Were there any promises made to you by Mr. Meeks or express warranties or anything about the unit at the time?
A. Just that he would give me one year's warranty as far as if anything was wrong. Whatever the warranty issued by the manufacturer I had, and his workmanship was a year as I remember it.
Q. So he specifically warranted to you that any workmanship would be covered for a year?
A. Yes.

\* \* \* \* \* \*

Q. What was your understanding of your agreement with Mr. Meeks as far as a safe installation and a proper installation?
A. I think most of that was assumed on my part that if I hired a professional to put it together that I—and it was a company, you know, Barco that had done quite a lot of local business when I checked around to find out who the people were in the heating and air business in town that it would be assumed—I mean it was assumed on my part that it would be a proper installation and a safe one.

From the sixty-nine pages of Meeks' testimony there is but one brief passage that could possibly relate to a representation by Meeks to Navarro. It follows:

Q—Did you recommend what unit should be put in there?
A—Yes
Q—And he took your recommendation?
A—Yes
Q—And he relied on you to figure out what would be best for that area?
A—Yes.
Q—Now, was part of your agreement with Mr. Navarro that you would install the unit properly and safely?
A—Yes.

The last question posed to Meeks is, of course, leading. The matter was not further explored by either party. All of the relevant questioning of both Meeks and Navarro was directed by both sides solely to establish the existence or non-existence of express or implied warranties and not to establish misrepresentation. The issue of whether Meeks had expressly represented that the installation of the unit was safe for the purposes for which such units are used was not in the suit. If it can be said, which we doubt, that a plaintiff can elect to treat an express or implied warranty as a "representation" under the DTPA after all the evidence is in, a defendant in that situation would then be under no obligation to object to the testimony concerning a representation or to refute that evidence unless misrepresentation has been pled. *See Harkey v. Texas Employers Ins. Assn.,* 146 Tex. 504, 208 S.W.2d 919, 923 (1948).

Since the trial amendment was re-urged on February 7, 1985, eleven days after the verdict was rendered, its allowance by the trial court is governed by the provisions of

TEX.R.CIV.P. 67, which provides as follows:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279.

*Id.*

■ In the motion re-urging the trial amendment it was claimed that the misrepresentation issue was tried by consent. In this regard, we are advised to look to the record not for *evidence* of the issue, but rather for evidence of *trial* of the issue. *Wendell v. Central Power and Light*, 677 S.W.2d 610, 618 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Similarly, it has been held that "the doctrine of implied consent applies only where it appears from the record that the issue was actually tried, although not pleaded." *Watts v. Watts*, 563 S.W.2d 314, 316 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.).

■ Shortly after the promulgation of the existing rule 67 in 1941, this Court had occasion to interpret and apply the rule in *Foxworth-Galbraith L. Co. v. Southwestern Cont. Corp.*, 165 S.W.2d 221 (Tex.Civ. App.—Fort Worth 1942, writ ref'd w.o.m.). There we wrote as follows:

A consideration of our Rules of Procedure as a whole leads us to believe that the first sentence of Rule 67 is not intended to establish a general rule of

practice, but is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried out a controverted issue, perhaps having overlooked the omission in the pleadings, or else having failed to plead carefully or clearly the issues upon which the case was tried. It is our opinion that the rule should be applied only with care, and in no event in a doubtful situation.

*Id.* at 224. The above language was cited with approval in *Jay Fikes and Associates v. Walton*, 578 S.W.2d 885 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.). Application of the foregoing rules leads to the conclusion that the issue of misrepresentation under sec. 17.46(b)(5) was not *tried* by consent. Although there may have been facts developed which would have raised the issue had it been properly plead, because of the lack of pleadings Meeks was not on notice that he needed to cross examine witnesses and develop a defense regarding the issue of misrepresentation. We hold that the trial court abused its discretion when it granted leave to file the trial amendment. Appellant's first point of error is sustained.

Because the trial amendment was improper, the judgment, if it was for misrepresentation,[2] cannot stand. Therefore, we will next look to see if the judgment can be upheld for breach of express or implied warranties under Section 17.50(a) of the DTPA.

Turning to Meeks' point of error three, we now consider whether the breach of warranty cause of action was barred by limitations.[3] The Bells assert that the statute of limitations did not begin to run until the date of the fire because they did not discover the breach until that date. It is Meeks' contention that the transaction with Navarro constituted a contract for the sale of goods and that the creation of an express or an implied warranty concerning the goods is governed by TEX.BUS. &

---

2. The judgment states that "from the verdict … a judgment should be rendered in favor of … [the Bells].

3. There was no statute of limitation contained in the DTPA before 1979.

COM.CODE ANN. secs. 2.313–2.314 (Vernon 1968) and consequently, sec. 2.725 of the Code controls the limitation period for an action brought upon breach of any such warranty. Section 2.725 is as follows:

(a) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(b) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods [4] and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

TEX.BUS. & COM.CODE ANN. sec. 2.725 (Vernon Supp.1986).

We must now determine whether the statute of limitations contained in the Business and Commerce Code, which applies to sales of goods, applies in light of the Bells' allegations of breach of warranty of installation (i.e. services).

■ Meeks acknowledges that mixed contracts, which include both a sale of goods and a service performed, have been troublesome and are treated differently in various jurisdictions, but asserts that Texas law has found resolution of the problem by the application of the "predominant purpose test." This test, Meeks asserts, is accomplished by an inquiry into the question of whether the predominant factor or purpose of the contract is a rendition of service, with goods incidently involved, or a sale of goods with labor incidently involved. If the dominant factor or the "essence of the transaction" is a sale, chapter 2 of the Business and Commerce Code applies. If the predominant purpose is the furnishing of services, that statute has no application.

We find that the above analysis is a correct interpretation of Texas law. In *G–W–L, Inc. v. Robichaux,* 643 S.W.2d 392 (Tex.1982), where our Supreme Court held that the provisions of chapter 2 (Sales) of the Business and Commerce Code are not applicable to the construction and sale of a new house because chapter 2 is limited to transactions involving the sale of "goods", goods are defined as "all things ... that are *movable;* and that a home is not normally movable." *Id.* at 394. The Court then wrote:

Additionally, building contracts involve the sale of both services and materials. In such hybrid transactions, the question becomes whether the dominant factor or "essence" of the transaction is the sale of the materials or the services. *See Freeman v. Shannon,* 560 S.W.2d 732 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). The contract in this case provided that Goldstar would "build, construct, and complete ... and furnish and provide all labor and material to be used in the construction and erection thereof." Clearly, the "essence" or "dominant" factor of the transaction was the furnishing of labor and the performance of work required for constructing the house. *See Robertson Lumber Co. v. Stephens Farmers Co-op Elevator,* 274 Minn. 17, 143 N.W.2d 622 (1966); *Markman v. Hoefer,* 252 Iowa 118, 106 N.W.2d 59 (1960).

*Id.* at 394. *See also Montgomery Ward & Co. v. Dalton,* 665 S.W.2d 507, 511 (Tex. App.—El Paso 1983, no writ).

■ Since it is without question that the transaction under consideration here is hybrid, in that it involves both goods and services, we look to the record to determine its predominant purpose. First, we note that it was stipulated at the Bells' request that Meeks was in the business of selling General Electric heat pumps. Navarro's testimony includes the following:

---

**4.** We note that Meeks' one year express warranty concerned his installation of the goods and so did not "extend to future performance *of the goods".*

Q. Was the agreement you had with Mr. Meeks that the entire unit and the wiring and everything would be purchased and he would install it? In other words, the heat pump, the closet unit and any wiring that was needed, any parts that were needed, he was going to sell all those to you and also going to install them all as part of the job?

A. That's my memory that it was a package deal.

At the time of the transaction, the house was old and the space available for the placement of a central air conditioning unit was limited to a small closet in a downstairs hallway. Navarro and Meeks, in discussing the options, eliminated the possibility of using a gas unit, ruled out a "straight electric unit" and "elected to go with that size heat pump unit and that size heater strips due to the fact that the old house had no insulation in it." Under these facts we hold that the predominant purpose or essence of the transaction was the selection and purchase of a specific air conditioning system with the installation labor only incidently involved. It follows that the Business and Commerce Code governs, and that sec. 2.725 concerning the statute of limitations is applicable to this breach of warranty claim under the pre-1979 amendment to the DTPA. *See generally Miller v. Dickenson*, 677 S.W.2d 253, 257–58 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *W.R. Weaver Co. v. Burroughs Corp.*, 580 S.W.2d 76, 79–80 (Tex. Civ.App.—El Paso 1979, writ ref'd n.r.e.).

■ We have carefully considered the Bells' contention that limitations began to run only after discovery of the breach of any warranties, i.e. upon the occurrence of the fire, but we find such position untenable.

None of the authorities cited by the Bells deal with characterization of the transaction under consideration as to whether it is governed by the Business and Commerce Code. For the most part, the cases referred to deal with building construction, implied warranties, or, they were decided prior to the enactment of the Code. *See*

*Miller v. Dickenson*, 677 S.W.2d at 257–58; *LaSara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984); *Gupta v. Ritter Homes, Inc.* 646 S.W.2d 168 (Tex.1983); *Puretex Lemon Juice v. Riekes and Sons of Dallas, Inc.*, 351 S.W.2d 119 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). We hold that the Bells' breach of warranty action was barred by limitations and sustain point of error three.

In light of our holding that a trial amendment, and thus a judgment, based on misrepresentation was improper, we need not address Meeks fourth point of error concerning the propriety of a judgment based on misrepresentation.

We also need not address Meeks' second point of error concerning improper submission of the breach of warranty issues because of our holding that the breach of warranty causes of action are barred by limitations.

From our disposition of these points of error it is abundantly clear that neither the jury verdict nor the evidence in this case can support a judgment against Meeks under any theory pled and proved. Accordingly, the judgment is reversed and judgment is now rendered that Benny E. Bell and wife, Glenda Bell, take nothing.