# IN THE COURT OF APPEALS OF IOWA

No. 22-1027
Filed October 11, 2023

**RANDY R. TJADEN,**
Plaintiff/Counterclaim Defendant-Appellee,

**vs.**

**LARRY D. RASMUSSEN and CONNIE S. RASMUSSEN,**
Defendants/Counterclaimants-Appellants.
_____

Appeal from the Iowa District Court for Black Hawk County, Laura Parrish,

Judge.

Plaintiffs appeal the district court's denial of their claims of breach of

contract, breach of warranties, negligent misrepresentation, and consumer fraud

and the court's grant of plaintiff's counterclaim of quantum meruit.  **AFFIRMED.**

Rebecca A. Feiereisen and Virginia F. Wilber of Trent Law Firm, PLLC,

Cedar Falls, for appellants.

Lawrence B. Cutler of Craig, Smith & Cutler, LLP, Eldora, for appellee.

Considered by Tabor, P.J., Buller, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**CARR, Senior Judge.**

Larry and Connie Rasmussen appeal the district court's denial of their claims of breach of contract, breach of warranties, negligent misrepresentation, and consumer fraud in a dispute between homeowners and a contractor. The Rasmussens did not prove their claims against Randy Tjaden. Tjaden is entitled to be paid for the work he performed. We affirm the decision of the district court.

## I.      Background Facts & Proceedings

The Rasmussens decided to remodel their home in Cedar Falls. The district court found:

> Generally, the project contemplated by [the Rasmussens] consisted of construction of a family room in the space that existed between the house and garage; replacing the garage roof and extending it over the new family room and connecting with the house roof; constructing a ramp along the garage to the new family room; and completion of some framing and insulation in the existing basement.

They discussed the project with Tjaden, a retired industrial arts teacher who had been involved in home construction since 1976. On April 9, 2019, Tjaden submitted an estimate of $87,250. He submitted another estimate on April 14 for $97,500. On April 22, Larry emailed Tjaden stating, "Connie and I would like you to proceed." The Rasmussens then discussed with Tjaden certain aspects of the project listed in the April 14 estimate.

Tjaden began working on the project. He periodically submitted bills requesting payment for materials and labor. The Rasmussens made eight payments of $7500, totaling $60,000. The Rasmussens stated they believed Tjaden would complete all of the work based on a firm bid of $87,250. Tjaden stated he believed he would be paid on a materials-and-labor basis, and the

Rasmussens expanded the scope of the project after he began working. Tjaden left the job unfinished in August 2019 based on the Rasmussens' failure to pay the amount they owed him, which he stated was $42,340.14.

Tjaden[1] filed an action on December 3, raising claims of breach of an oral contract, quantum meruit, and unjust enrichment. The Rasmussens raised counterclaims, alleging (1) breach of oral contract, (2) breach of express warranty, (3) breach of implied warranty of good and workmanlike quality, (4) breach of implied warranty of fitness for a particular purpose, (5) fraudulent misrepresentation, (6) negligent misrepresentation, and (7) consumer fraud.

The case was tried to the court in December 2020. Tjaden and one of his employees, William Speicher, testified about their work on the Rasmussens' house. Larry testified about aspects of the project he believed Tjaden had not completed correctly. Tjaden presented the expert testimony of Eli LaMasters, who stated there were no structural deficiencies or flaws in workmanship in Tjaden's work. Wayne Magee, president of Magee Construction Co., testified as an expert witness for the Rasmussens concerning work to be completed on the house. Magee did not identify flaws in Tjaden's work but submitted a bid to complete the work.

On the issue of the breach of contract, the district court found:

> It cannot be objectively concluded that the parties in this case ever reached a meeting of the minds as to the specific work to be completed by Tjaden. Both parties' recollections and

---

[1] Tjaden originally filed the action under the name Tjaden Construction, Inc. He later amended his petition to change the name to Tjaden Contractors, Inc. The Rasmussens filed a motion to dismiss, asserting Tjaden Construction was not a corporate entity in Iowa. The district court denied the motion. Tjaden amended the petition to file suit in an individual capacity.

understandings differed significantly as to the work to be completed (and the cost of the such work) and the lack of any writing to confirm either parties' understanding prevents the court from finding sufficient objective evidence upon which to base a contract. Put simply, there was never a meeting of the minds.

The court concluded, "Neither party can prove the terms and conditions of the contract, and because the terms are unclear, cannot prove that the other party breached those terms." The court determined Tjaden was entitled to the reasonable value of his services under a theory of quantum meruit. The court found the Rasmussens owed Tjaden $42,430.14 for work he completed.[2]

The court additionally found, "The lack of a contract and the lack of specificity identified by either party in this matter make a conclusion that there was any express warranty as to the majority of the items claimed by Rasmussen impossible to reach." The court also found the Rasmussens did not prove their claims of breach of implied warranties, stating, "There is no evidence on this record that the work completed by Tjaden was not completed in a competent and quality manner." The court rejected the Rasmussens' claims of fraudulent misrepresentation and negligent misrepresentation relating to the name of Tjaden's business. Finally, the court denied the Rasmussens' claims of consumer fraud.

The Rasmussens filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The court specifically found that where the testimony between the parties was inconsistent, Tjaden was more credible. The court denied the motion. The Rasmussens appeal the district court decision.

---

[2] The court did not reach the issue of unjust enrichment raised by Tjaden in light of its award on the issue of quantum meruit.

## II. Standard of Review

This case was tried at law, and our review is for the correction of errors of law. *See* Iowa R. App. P. 6.907. The district court's factual findings have the effect of a special verdict. *Id.* These factual findings are binding on appeal if they are supported by substantial evidence. *Pitz v. United States Cellular Operating Sys.*, 989 N.W.2d 636, 640 (Iowa 2023). "Evidence is substantial when reasonable minds accept the evidence as adequate to reach a conclusion. 'Evidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding.'" *Postell v. Am. Fam. Mut. Ins. Co.*, 823 N.W.2d 35, 41 (Iowa 2012) (citation omitted).

## III. Breach of Contract

The Rasmussens claim the district court erred by finding Tjaden did not breach a contract for renovations to their house. They state, "There was clearly a meeting of the minds on the work to be performed and the estimated cost thereof." They assert the estimate submitted by Tjaden on April 9, 2019, was an offer, which they accepted. The Rasmussens claim Tjaden breached the contract when he refused to continue to perform the work outlined in the estimate.

One element to the creation of a contract is a meeting of the minds on the material terms of the contract. *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011). "[T]he contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). The parties' mutual assent to the

terms of a contract must be "based on objective evidence, not on the hidden intent of the parties." *Schaer v. Webster Cnty.*, 644 N.W.2d 327, 338 (Iowa 2002).

The Rasmussens' appellate brief concedes the April 9, 2019 estimate "is devoid of specificity." Also, "Nothing is indicated regarding how Mr. Tjaden was to be paid, how the jobs would be completed, or a timeline." The estimate does not contain sufficiently definite terms that would permit "the court to determine the duty of each party and the conditions of performance." *See Royal Indem. Co.*, 786 N.W.2d at 846.

Also, following the April 9 estimate for $87,250, Tjaden submitted another estimate on April 14 for $97,500. It was following the second estimate that the Rasmussens informed Tjaden that they wanted him to proceed with the renovations. Additional changes were made to the renovation plans. Tjaden billed the Rasmussens on a materials and labor basis and the Rasmussens paid him until there was a falling out between the parties in August 2019. The objective evidence shows the parties did not consider either of Tjaden's estimates as a final contract. *See Schaer*, 644 N.W.2d at 338.

We find no error in the district court's conclusion that there was no meeting of the minds by the parties on the terms of a proposed contract. Because there was no meeting of the minds, there was no contract. *See Peak*, 799 N.W.2d at 544. Without a contract, there can be no breach of contract. *Earth Linked Wind Solutions, L.L.C. v. Heartland Energy Solutions, L.L.C.*, No. 14-1060, 2015 WL 3624331, at *2 (Iowa Ct. App. June 10, 2015) ("Absent a meeting of the minds, no contract existed and there could be no breach by either party.").

### IV. Breach of Express Warranty

The Rasmussens claim Tjaden breached express warranties because he did not complete the work they requested. Iowa Code section 554.2313(1)(a) (2019) provides "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." A party claiming breach of an express warranty must show defects in the product within the warranty period. *Etchen v. Holiday Rambler Corp.*, 574 N.W.2d 355, 359 (Iowa Ct. App. 1997).

The district court found, "The lack of a contract and the lack of specificity identified by either party in this matter make a conclusion that there was any express warranty as to the majority of the items claimed by Rasmussen impossible to reach." There was no final agreement on the items the Rasmussens claim are defective.[3] The district court did not err by finding no breach of express warranties.

### V. Breach of Implied Warranties

**A.** The Rasmussens claim the court erred by failing to find a breach of implied warranty of fitness for a particular purpose. Section 554.2315 provides,

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under section 554.2316 an implied warranty that the goods shall be fit for such purpose.

---

[3] We note the Rasmussens claim on appeal that Tjaden breached an express warranty by installing scissor trusses for the new roof and they requested attic trusses, which would give them extra storage room. The April 9 and April 14 estimates, however, both specifically provide for scissor trusses.

"The warranty of fitness under section 554.2315 is said to turn on the 'bargain-related' facts as to what the seller had reason to know about the buyer's purpose for the goods and about his reliance on the seller's skill or judgment in selecting them." *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 84 (Iowa 1984). The Iowa Supreme Court has stated:

> [A]ny recovery under warranty for a specific purpose is predicated on a showing that (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know the buyer was relying on the seller's skill or judgment to furnish suitable goods; and (3) the buyer in fact relied on the seller's skill or judgment to furnish suitable goods.

*Id.*

The Rasmussens did not present evidence to show the work completed by Tjaden did not meet the Rasmussens' particular purpose. Although the Rasmussens asserted they did not get the roof they wanted, there is no evidence the roof constructed by Tjaden was not effective. Also, the wheelchair ramp met the requirements for the State and the City of Cedar Falls. Furthermore, Tjaden made adjustments to the garage as requested by the Rasmussens. We conclude the Rasmussens did not prove their claim of breach of an implied warranty of fitness for a particular purpose.

**B.** The Rasmussens also claim Tjaden breached an implied warranty to perform in a workmanlike manner. "In building and construction contracts, in the absence of an express agreement to the contrary, it is implied that the building will be erected in a reasonably good and workmanlike manner and will be reasonably fit for the intended purpose." *Markman v. Hoefer*, 106 N.W.2d 59, 62 (Iowa 1960); *see also Rosauer Corp. v. Sapp Dev., L.L.C.*, 856 N.W.2d 906, 908 (Iowa 2014).

The purpose for the implied warranty of performance in a workmanlike manner is the protection of consumers. *Rosauer Corp.*, 856 N.W.2d at 910. The phrase "a good and workmanlike manner" has been interpreted to mean "to produce definite and certain results." *Reilly Constr. Co., Inc. v. Bachelder, Inc.*, No. 14-0817, 2015 WL 1331634, at *6 (Iowa Ct. App. Mar. 25, 2015).

The district court found, "There is no evidence on this record that the work completed by Tjaden was not completed in a competent and quality manner." The Rasmussens' expert witness, Magee, did not identify any defects in Tjaden's work. We conclude the Rasmussens did not prove their claim Tjaden breached an implied warranty of performing in a reasonably good and workmanlike manner. *See Markman*, 106 N.W.2d at 62.

## VI. Negligent Misrepresentation

The Rasmussens contend the district court erred by ruling against them on their claim of negligent misrepresentation.[4] They state Tjaden was a professional and they relied upon his advice in the construction process.

The tort of negligent misrepresentation has been defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to

---

[4] Before the district court the Rasmussens made claims of fraudulent misrepresentation, negligent misrepresentation, and consumer fraud relating to the name of Tjaden's business. Tjaden was operating under the trade name Tjaden Construction, Inc., but the name of his corporation registered with the State was Tjaden Contractors, Inc. The district court found the Rasmussens could not show they were damaged by this difference in the name of the company. The Rasmussens have not raised their claims regarding the name of Tjaden's corporation on appeal.

exercise reasonable care or competence in obtaining or communicating the information.

*Dinsdale Constr., LLC v. Lumber Specialties, Ltd.*, 888 N.W.2d 644, 649–50 (Iowa 2016) (quoting Restatement (Second) of Torts § 552, at 126–27 (1977)).

"Only those who are 'in the business of supplying information to others' can be liable for negligent misrepresentation." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 111 (Iowa 2012) (citation omitted). The court considers "whether the person providing the information 'is manifestly aware of the use that the information will be put, and intends to supply it for that purpose.'" *Id.* at 111–12 (citation omitted). Iowa does not recognize negligent misrepresentation claims "where the defendant was a retailer in the business of selling and servicing merchandise" or "a seller who made misrepresentations pursuant to the sale of a business." *Id.* at 112.

The Rasmussens assert Tjaden made misrepresentations by holding himself out as knowing proper construction practices, when this was not the case. As already noted, however, the Rasmussens' own expert did not testify to defects in Tjaden's work. The Rasmussens have not shown Tjaden made misrepresentations, negligent or otherwise. Additionally, they have not shown Tjaden was in the business of supplying information to others, rather than a retailer in the business of selling merchandise. *See id.* at 111–12. We find no error in the denial of their claim of negligent misrepresentation.

## VII. Consumer Fraud

The Rasmussens claim Tjaden engaged in consumer fraud, in violation of section 714H.3(1), which provides:

A person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes. For the purposes of this chapter, a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to a material fact or facts.

A person who has been damaged by consumer fraud may bring a civil action. Iowa Code § 714H.5(1). Home construction contracts are included within the protections of chapter 714H. *Scenic Builders, L.L.C. v. Peiffer*, No. 10-0794, 2011 WL 2078225, at *2 (Iowa Ct. App. May 25, 2011).

The Rasmussens contend that Tjaden engaged in consumer fraud by submitting an estimate that was both inaccurate and incomplete. The district court rejected this argument finding, "The work that Tjaden did complete was completed in a workmanlike manner, and by all accounts, he would have proceeded to finish the project had he been paid in full for his work." We determine the Rasmussens have not proven their claim of consumer fraud. *See* Iowa Code § 714H.3(1) (noting the party bringing a claim of consumer fraud has the burden to "prove that the prohibited practice related to a material fact or facts").

We affirm the decision of the district court.

**AFFIRMED.**